STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Jonathan J. HUBBARD, Defendant-Appellant.

Supreme Court

*No. 2006AP2753–CR. Oral argument April 10, 2008.
—Decided July 15, 2008.*

2008 WI 92

(Also reported in 752 N.W.2d 839.)

3

For the plaintiff-respondent-petitioner the cause was argued by *David J. Becker*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant there was a brief filed by *Steven W. Zaleski* and *The Zaleski Law Firm*, Janesville, and oral argument by *Steven W. Zaleski*.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals,[1] which reversed and remanded the judgment and orders of the Ozaukee County Circuit Court, Thomas R. Wolfgram, Judge.

¶ 2. Defendant Jonathan J. Hubbard (Hubbard) was convicted in a jury trial of injury by intoxicated use of a vehicle, a violation of Wis. Stat. § 940.25(1)(a).[2] During deliberations, the jury requested clarification of a word or term in the jury instructions. The jury had been instructed that to convict Hubbard it was required to find beyond a reasonable doubt that: (1) Hubbard

---

[1] *State v. Hubbard*, 2007 WI App 240, 306 Wis. 2d 356, 742 N.W.2d 893.

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

operated a vehicle; (2) Hubbard's operation of the vehicle caused great bodily harm; and (3) Hubbard was under the influence of prescription medication at the time he operated the vehicle. The court added that " 'under the influence' means that the defendant's ability to operate a vehicle was materially impaired because of consumption of a prescription medication." This part of the court's instruction was based upon Wis. Stat. § 939.22(42).

¶ 3. The court sent a copy of its instructions to the jury room with verdict forms. After deliberating, the jury sent Judge Wolfgram a question: "Could the judge define 'materially' impaired? Does this mean that he was impaired enough to have an effect on outcome? If not, what?"

¶ 4. We are asked to address whether the circuit court erred when it responded to the jury's request for clarification by directing the jury to "give all words not otherwise defined in the jury instructions their ordinary meaning." The State asserts that the circuit court's response was correct because the term "materially impaired" has no peculiar meaning in the context of criminal law. Hubbard contends that the circuit court's response was erroneous because "materially impaired" has a peculiar meaning in the law that was established by this court's decision in *State v. Waalen,* 130 Wis. 2d 18, 386 N.W.2d 47 (1986). Hubbard asserts that Judge Wolfgram should have instructed the jury as to the meaning of "materially impaired" by using certain phrases in the *Waalen* decision.

¶ 5. We conclude that the circuit court's response to the jury's request for clarification was not error. The term "materially impaired" does not have a technical or peculiar meaning in the law beyond the time-tested explanations in standard jury instructions; therefore, the circuit court's response to the jury was not error,

5

comported with Wis. Stat. § 990.01, and did not constitute an erroneous exercise of discretion. Accordingly, we reverse the court of appeals.

## I. BACKGROUND

¶ 6. On January 27, 2005, Hubbard was involved in a two car accident. Hubbard's Mitsubishi sports utility vehicle rear-ended a Volkswagen Jetta and pushed it off the highway into a tree. The crash caused serious injuries to a nine-year-old girl who was a passenger in the Volkswagen. She suffered injuries to her head, collarbone, arm, and face. An officer at the scene described Hubbard as "disoriented" after the accident. Hubbard told the officer he had taken 13 pills of a prescription anxiety medication called Xanax[3] in the 24–hour period preceding the accident. Xanax is a controlled substance. *See* Wis. Stat. § 961.20(2)(a) (Alprazolam).

¶ 7. On January 31, 2005, the State charged Hubbard with one count of injury by intoxicated use of a motor vehicle, contrary to Wis. Stat. § 940.25(1)(a). Ultimately, a jury trial was scheduled for March 21, 2006.

¶ 8. The parties briefly addressed jury instructions at a pretrial hearing on January 17, 2006. The

---

[3] Xanax is a brand name for the generic prescription drug alprazolam. WebMD, *Drugs and Treatments – Xanax Oral,* http://www.webmd.com/drugs/drug-9824–Xanax+Oral.aspx?drugid=9 824&drugname=Xanax+Oral (last visited June 30, 2008).

The most frequent side effects of alprazolam include drowsiness and lightheadedness. *Physicians' Desk Reference* 3044 (62d ed. 2007). "Manifestations of alprazolam overdosage include somnolence, confusion, impaired coordination, diminished reflexes, and coma." *Id.* at 3045.

The record indicates that the 13 Xanax pills consumed by Hubbard in the 24–hour period preceding the accident exceeded the dosage prescribed by his doctor.

State indicated that "there isn't a specific instruction dealing with causing injury by operation of a vehicle under the influence of a controlled substance." It suggested merging Wis JI—Criminal 1262[4] with Wis JI—Criminal 2664[5] to tailor an instruction to the facts of

[4] Wis JI—Criminal 1262 deals with causing great bodily harm by operation of a vehicle while under the influence of an intoxicant in violation of Wis. Stat. § 940.25(1)(a). The instruction defines "under the influence of an intoxicant" as follows:

"Under the influence of an intoxicant" means that the defendant's ability to operate a vehicle was materially impaired because of consumption of an alcoholic beverage.

Not every person who has consumed alcoholic beverages is "under the influence" as that term is used here. What must be established is that the person has consumed a sufficient amount of alcohol to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle.

It is not required that impaired ability to operate be demonstrated by particular acts of unsafe driving. What is required is that the person's ability to safely control the vehicle be materially impaired.

Wis JI—Criminal 1262 (2004) (footnote omitted).

[5] Wis JI—Criminal 2664 deals with operating a vehicle under the influence of a controlled substance in violation of Wis. Stat. § 346.63(1)(a), which applies if "the total number of suspensions, revocations, and other convictions counted under s. 343.307(1) within a 10-year period, equals 2." *See* § 346.65(2)(am)2. The instruction defines "under the influence" as follows:

"Under the influence" means that the defendant's ability to operate a vehicle was impaired because of consumption of a controlled substance.

[Not every person who has consumed *(name controlled substance)* is "under the influence" as that term is used here.] What must be established is that the person has consumed a sufficient amount of *(name controlled substance)* to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle.

7

the case. This suggestion corresponded with notes 1 and 7 of the comment to Wis JI—Criminal 1262 (2004).[6]

¶ 9. Hubbard's attorney pointed the court to Wis JI—Criminal 2600 Operating While Intoxicated: Intro ductory Comment (2004). He mentioned "materially

> It is not required that impaired ability to operate be demonstrated by particular acts of unsafe driving. What is required is that the person's ability to safely control the vehicle be impaired.

Wis JI—Criminal 2664 (2004) (footnotes omitted).

[6] Notes 1 and 7 of the comment to Wis JI—Criminal 1262 (2004) read as follows:

> 1. This instruction is drafted for cases involving the influence of an intoxicant, which is defined to include "alcohol beverage or controlled substance under ch. 961 or both, . . . any other drug or . . . an alcohol beverage and any other drug." See § 939.22(42) in note 7, below. For a model tailored to the influence of a controlled substance, see Wis JI—Criminal 2664. For a model tailored to the combined influence of an intoxicant and a controlled substance, see Wis JI—Criminal 2664A.
>
> . . . .
>
> 7. The instruction is drafted for cases involving the influence of an intoxicant. For a model tailored to the influence of a controlled substance, see Wis JI—Criminal 2664. For a model tailored to the combined influence of an intoxicant and a controlled substance, see Wis JI—Criminal 2664A. The definition in the instruction paraphrases the full definition provided in § 939.22(42):
>
>> "Under the influence of an intoxicant" means that the actor's ability to operate a vehicle or handle a firearm or airgun is materially impaired because of his or her consumption of an alcohol beverage, of a controlled substance or controlled substance analog under ch. 961, of any combination of an alcohol beverage, controlled substance and controlled substance analog, or of any other drug or of an alcohol beverage and any other drug.
>
> For a discussion of issues relating to the definition of "under the influence," see Wis JI—Criminal 2600 Introductory Comment, Sec. VIII.

impaired" and noted that there were "a lot of options I think for the court in this sense." The court did not rule on jury instructions at the January 17 hearing.

¶ 10. Prior to the opening of Hubbard's jury trial, Judge Wolfgram stated on the record that a jury instructions conference had been held in chambers regarding a dispute over the instruction defining "under the influence." Judge Wolfgram concluded that he was going to include the word "materially" in the jury instructions in defining "under the influence" because Hubbard was charged under the Criminal Code. Neither the State nor Hubbard objected to this decision.

¶ 11. At trial the jury was instructed in part as follows:

> Section 940.25(1)(a) of the Criminal Code of Wisconsin is violated by one who causes great bodily harm to another by the operation of a vehicle while under the influence of a prescription medication.
>
> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three elements were present.
>
> 1. The defendant operated a vehicle. . . .
>
> 2. The defendant's operation of a vehicle caused great bodily harm to [the victim]. . . .
>
> 3. The defendant was under the influence of a prescription medication at the time the defendant operated a vehicle.
>
> "Under the influence" means that the defendant's ability to operate a vehicle was materially impaired because of consumption of a prescription medication.
>
> Not every person who has consumed Xanax or alprazolam is "under the influence" as that term is used

here. What must be established is that the person has consumed a sufficient quantity of Xanax or alprazolam to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle.

It is not required that impaired ability to operate be demonstrated by particular acts of unsafe driving. What is required is that the person's ability to safely control the vehicle is materially impaired.

¶ 12. Neither party objected to the instructions, which were tendered to the jury with verdict forms for "guilty" and "not guilty."

¶ 13. According to the criminal court record, jury deliberations began at 11:05 a.m. on March 23, 2006. Shortly after 1 p.m., the jury sent a written question to Judge Wolfgram, which stated: "Could the judge define 'materially' impaired? Does this mean that he was impaired enough to have an effect on outcome? If not, what?"

¶ 14. Following the jury's question, Judge Wolfgram heard argument from Hubbard's attorney and the State regarding how to respond. Initially Judge Wolfgram proposed using language from *Waalen* to define the term "materially impaired" for the jury. The proposed language, hereinafter referred to as "the *Waalen* language," was:

"material impairment" under sec. 939.22(42), Stats., exists when a person is incapable of driving safely, or is without proper control of all those faculties . . . necessary to avoid danger to others.

*Waalen,* 130 Wis. 2d at 27 (citation and internal quotation marks omitted). The State objected to the court using this language to respond to the jury's request for clarification.

10

¶ 15. Judge Wolfgram noted that the jury's question included quotation marks around the word "materially," not the term "materially impaired." The circuit court considered sending the jury definitions of the word "material," or variations of the word "material," from Black's Law Dictionary, Webster's Dictionary, and Encarta Online Dictionary.

¶ 16. After hearing arguments from Hubbard's attorney and the State, Judge Wolfgram concluded that "the *Waalen* language" should not be submitted to the jury. He concluded that "the *Waalen* language" did not define "materially impaired"; instead, it cited two examples of circumstances that constitute material impairment. Over the objection of Hubbard's attorney, Judge Wolfgram submitted a printed note to the jury that read: "Please give all words not otherwise defined in the jury instructions their ordinary meaning."

¶ 17. The jury returned a guilty verdict at 2:13 p.m., less than one hour after receiving the court's response.

¶ 18. On April 11, 2006, Hubbard was sentenced. Prior to sentencing, Hubbard filed a motion for a new trial, arguing that Judge Wolfgram's response to the jury's request for clarification was error. The parties presented argument regarding the motion immediately after sentencing. Hubbard maintained that "the *Waalen* language" defined "material impairment" and asserted that the introductory comment to Wis JI—CRIMINAL 2600 also indicates that "the *Waalen* language" should be used to define "material impairment." Judge Wolfgram orally denied Hubbard's motion.

¶ 19. On October 11, 2006, Hubbard filed a second motion for a new trial. He filed a second motion because his first was filed and determined prior to the entry of the judgment of conviction. Judge Wolfgram

entered an order denying Hubbard's post-conviction motion for a new trial on October 19, 2006.

¶ 20. Hubbard appealed the circuit court's judgment of conviction and its orders denying his motions for a new trial. The court of appeals determined that "materially impaired" has a "peculiar meaning in the context of criminal charges" and that *Waalen* clarified the meaning of the term. *Hubbard,* 306 Wis. 2d 356, ¶ 12. The court of appeals concluded that "the *Waalen* language" defined "materially impaired" and that the circuit court erroneously exercised its discretion when it declined to instruct the jury on the *Waalen* definition of "materially impaired." *Id.,* ¶ 17. The court of appeals reversed and remanded for a new trial in the interest of justice because it was not convinced the real controversy had been fully tried. *Id.,* ¶ 20.

¶ 21. The State petitioned this court for review, which we granted on January 22, 2008.

## II. STANDARD OF REVIEW

██

¶ 22. This case involves construction of the statutory term "materially impaired," which was used in a criminal jury instruction. We review jury instruction issues that involve the construction of statutory terms de novo. *See State v. Harmon,* 2006 WI App 214, ¶ 8, 296 Wis. 2d 861, 723 N.W.2d 732 (citing *State v. Neumann,* 179 Wis. 2d 687, 699, 508 N.W.2d 54 (Ct. App. 1993)).

¶ 23. A court has broad discretion in deciding whether to give a particular jury instruction. *State v. Fonte,* 2005 WI 77, ¶ 9, 281 Wis. 2d 654, 698 N.W.2d 594. The court's determination will not be reversed absent an erroneous exercise of discretion. *State v. Miller,* 231 Wis. 2d 447, 464, 605 N.W.2d 567 (Ct. App.

12

1999); *State v. Morgan,* 195 Wis. 2d 388, 448, 536 N.W.2d 425 (Ct. App. 1995).

### III. ANALYSIS

¶ 24. This case involves the narrow question whether the circuit court erred when it responded to a jury's request for clarification of a word used in jury instructions by instructing the jury to "give all words not otherwise defined in the jury instructions their ordinary meaning." We are not asked to address whether the initial jury instructions provided by the court were correct for the offense charged.[7] Neither party contends that these instructions were erroneous.

¶ 25. First, we will set forth some general principles about instructing and reinstructing a jury. Second, we will discuss this court's decision in *Waalen.* Finally, we will evaluate whether the circuit court's response to the jury's request for clarification was erroneous in light of *Waalen.*

A. General Principles

¶ 26. "The purpose of a jury instruction is to fully and fairly inform the jury of a rule or principle of law applicable to a particular case." *Nommensen v. Am. Cont'l Ins. Co.,* 2001 WI 112, ¶ 36, 246 Wis. 2d 132, 629 N.W.2d 301 (citing *Grube v. Daun,* 213 Wis. 2d 533, 549, 570 N.W.2d 851 (1997); *Nowatske v. Osterloh,* 198 Wis. 2d 419, 428, 543 N.W.2d 265 (1996)). The objective of "an instruction is not only to state the law accurately but

---

[7] Hubbard acknowledges, as did the court of appeals, that "the standard instructions given by the trial court were arguably legally sufficient." *Hubbard,* 306 Wis. 2d 356, ¶ 10.

also to explain what the law means to persons who usually do not possess law degrees." *Id.* (citation and internal quotation marks omitted).

¶ 27. "Jury instructions are not to be judged in artificial isolation, but must be viewed in the context of the overall charge." *State v. Pettit,* 171 Wis. 2d 627, 637–38, 492 N.W.2d 633 (Ct. App. 1992) (citing *Mullaney v. Wilbur,* 421 U.S. 684, 704–05 (1975) (Rehnquist, J., concurring); *Barrera v. State,* 109 Wis. 2d 324, 330–31, 325 N.W.2d 722 (1982); *State v. Reynosa,* 108 Wis. 2d 499, 510, 322 N.W.2d 504 (Ct. App. 1982)). "If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist." *Fischer v. Ganju,* 168 Wis. 2d 834, 850, 485 N.W.2d 10 (1992) (citing *White v. Leeder,* 149 Wis. 2d 948, 954–55, 440 N.W.2d 557 (1989); *State v. Paulson,* 106 Wis. 2d 96, 108, 315 N.W.2d 350 (1982)).

¶ 28. "A circuit court has broad discretion in deciding whether to give a requested jury instruction." *State v. Coleman,* 206 Wis. 2d 199, 212, 556 N.W.2d 701 (1996) (citing *State v. Vick,* 104 Wis. 2d 678, 690, 312 N.W.2d 489 (1981)). " 'The decision to give or not to give a requested jury instruction lies within the trial court's discretion' and will not be reversed absent an erroneous exercise of discretion." *Arents v. ANR Pipeline Co.,* 2005 WI App 61, ¶ 42, 281 Wis. 2d 173, 696 N.W.2d 194 (quoting *Miller,* 231 Wis. 2d at 464).

¶ 29. This case involves a question regarding a circuit court's reinstruction of a jury after a request for clarification during deliberations.[8] "The necessity for,

[8] Chapter 805 of the Wisconsin Statutes, which addresses

the extent of, and the form of re-instruction rests in the sound discretion of the court." *Hareng v. Blanke,* 90 Wis. 2d 158, 166, 279 N.W.2d 437 (1979) (citing *Seitz v. Seitz,* 35 Wis. 2d 282, 300, 151 N.W.2d 86 (1967); *Olson v. Siordia,* 25 Wis. 2d 274, 279, 130 N.W.2d 827 (1964)).

## B. *State v. Waalen*

¶ 30. This court's decision in *Waalen* is central to resolving the issue before us; therefore, it is appropriate to review *Waalen* before proceeding to analyze whether the circuit court's response to the jury's request for clarification was error.

¶ 31. A jury convicted David A. Waalen (Waalen) of operating a motor vehicle while under the influence of an intoxicant, a violation of Wis. Stat. § 346.63(1)(a) (1981–82) of the Motor Vehicle Code. *Waalen,* 130 Wis. 2d at 19. The *Waalen* case involved a single issue: "whether the circuit court properly instructed the jury regarding the definition of 'under the influence.' " *Id.* at 20. The circuit court instructed the jury as follows:

> The phrase "under the influence of an intoxicant" covers not only the well-known and easily recognized conditions and degrees of intoxication but also any abnormal mental or physical conditions which [are] the result of indulging in any degree in intoxicating liquors,

---

civil procedure for trials, includes a section governing reinstruction of a jury. Wisconsin Stat. § 805.13(5) states: "Reinstruction. After the jury retires, the court may reinstruct the jury as to all or any part of the instructions previously given, or may give supplementary instructions as it deems appropriate."

Wisconsin Stat. § 972.10, the Criminal Code counterpart to Wis. Stat. § 805.13, does not include a specific provision governing reinstruction of a jury.

including beer, which tends to deprive one of the clearness of intellect and self control which one would otherwise possess.

Not every person who has consumed alcoholic beverages falls within the ban of the statute. If that consumption of alcoholic beverages does not cause the person to be influenced in the ordinary and well-understood meaning of the term, the person is not under the influence of an intoxicant within the meaning of the statute.

*Id.* at 22. The circuit court's instruction was based largely on the 1981 version of the standard jury instruction for operating while under the influence of an intoxicant, Wis JI—Criminal 2663 (1981). *Waalen,* 130 Wis. 2d at 22. The 1981 standard instruction was, in turn, "virtually identical" to language this court had previously endorsed in *Fond du Lac v. Hernandez,* 42 Wis. 2d 473, 167 N.W.2d 408 (1969).[9] *Waalen,* 130 Wis. 2d at 26.

---

[9] The jury instruction for "under the influence of an intoxicant" that this court endorsed in *Fond du Lac v. Hernandez,* 42 Wis. 2d 473, 475–76, 167 N.W.2d 408 (1969), was:

> The expression "under the influence of an intoxicant" covers not only all the well-known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors, including beer, and which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess.

> A person who is even to the slightest extent under the influence of an intoxicant in the common and well-understood acceptation of the term is—to some degree at least—less able either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern motor vehicle with safety to himself and the public. Not every man who has consumed alcoholic beverages falls within the ban of the statute. If that consumption of alcoholic beverages does not cause him to be influenced in the

16

¶ 32. Waalen contended that the circuit court erred in instructing the jury because its instruction describing "under the influence" differed from language used to define the term in the 1982 standard jury instruction as well as the definition found in Wis. Stat. § 939.22(42) of the Criminal Code. *Waalen*, 130 Wis. 2d at 20. He asserted that the following instruction should have been given:

> "Under the influence" of an intoxicant means that a driver's ability to operate a vehicle is materially impaired because of his consumption of an alcoholic beverage.
>
> Not every person who has consumed alcoholic beverages is "under the influence" as that term is used here. What must be established is that the person has consumed a sufficient amount of alcohol to cause him to be *substantially less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle.*
>
> It is not required that impaired ability to operate be demonstrated by particular acts of unsafe driving. What is required is that the person's ability to safely control his vehicle be *materially, that is substantially, impaired.*

*Id.* at 21 (emphasis added) (footnote omitted). Waalen's proposed jury instruction was the standard instruction found in Wis JI—Criminal 2663 (1982). *Waalen,* 130 Wis. 2d at 21.

¶ 33. In essence, Waalen argued that the 1982 standard jury instruction was mandatory. He asserted that the definition of "under the influence" in the Motor Vehicle Code should align with the definition of "under the influence of an intoxicant" in the 1982 standard jury instruction, based on the Criminal Code at Wis. Stat.

---

ordinary and well understood meaning of the term, he is not under the influence of an intoxicant within the meaning of the statute or ordinance in this particular case.

§ 939.22(42). *Waalen,* 130 Wis. 2d at 23. In short, Waalen argued that to prove a defendant was "under the influence" for purposes of the Motor Vehicle Code, the state was required to demonstrate that a person's consumption of alcohol "materially" or "substantially" affected his ability to drive his vehicle, as indicated in the 1982 standard jury instruction's interpretation of "under the influence of an intoxicant" in the Criminal Code. *Id.* at 23–24.

¶ 34. This court rejected Waalen's arguments. *Id.* at 26–28. First, it expressly upheld the circuit court's jury instruction, *id.* at 28, noting that the instruction was almost identical to the 1981 standard instruction and the one in *Hernandez. Id.* at 26, 28. The court concluded that the circuit court's instruction was "not inconsistent with the Criminal Code definition of 'under the influence.' " *Id.* at 28. It also indicated that the circuit court's definition of "under the influence"—"abnormal mental or physical conditions . . . which tends to deprive one of the clearness of intellect and self control which one would otherwise possess"—was an accurate description of when a driver is "under the influence" for a jury to infer that a defendant was "materially impaired" or "incapable of safely driving."[10] *Id.*

¶ 35. Second, the *Waalen* court rejected part of the 1982 standard instruction and clarified the meaning of "material impairment," holding that "material impairment" does not mean "substantial impairment." *Id.* at 27.[11]

---

[10] The *Waalen* court noted that the "incapable of safely driving" language was added to Wis. Stat. § 346.63(1)(a) (1983–84), the Motor Vehicle Code provision dealing with operating a vehicle under the influence of an intoxicant. *State v. Waalen,* 130 Wis. 2d 18, 27–28, 386 N.W.2d 47 (1986).

[11] The court indicated that the Jury Instructions Commit-

¶ 36. The *Waalen* court explained why "material impairment" and "substantial impairment" are incompatible:

> "Material impairment" should not be given a definition that is inconsistent with the purpose of the statute, which is to foster highway safety. In the preface to the 1981 revisions of the Criminal Code, the legislature expressly stated that its purpose was to "provide maximum safety for all users of the highways of this state" from the harm threatened by persons who operate motor vehicles while under the influence of an intoxicant. Laws of 1981, ch. 20, secs. 2051(13)(a)1 and 2051(13)(b)1. *See State v. Caibaiosai*, 122 Wis. 2d 587, 591, 363 N.W.2d 574 (1985). Requiring "substantial impairment" of an individual's ability to operate a vehicle before that person could be found "under the influence" would be inconsistent with the expressed legislative intent because it would not provide maximum safety for all users of state highways.

*Waalen,* 130 Wis. 2d at 27.

¶ 37. The *Waalen* court then gave two examples of "material impairment," stating that " 'material impairment' under sec. 939.22(42), Stats., *exists when* a person is incapable of driving safely, or is without proper control of all those faculties . . . necessary to avoid danger to others." *Id.* at 27 (emphasis added) (citation and internal quotation marks omitted). This quoted language—"the *Waalen* language"—is central to the issue before us.

---

tee had revised the 1981 standard instruction to eliminate a perceived inconsistency between the definitions of "under the influence" in the Motor Vehicle Code and the Criminal Code. *Id.* at 26. However, in doing so, the Jury Instructions Committee erred when it revised the 1981 instruction to define "material" as "substantial," citing no authority for the revision. *Id.* at 27.

## C. Analysis and Application of *State v. Waalen*

¶ 38. We must put the *Waalen* decision in historical context to give it proper perspective. David Waalen was involved in an automobile accident on or about May 28, 1982. *Id.* at 20. The date is important because the circuit court and this court utilized the 1981–82 Wisconsin Statutes in their analyses. *Id.*

¶ 39. In 1982 Wis. Stat. § 346.63(1) and (2) (1981–82) read in part:

> Operating under influence of intoxicant. (1) No person may drive or operate a motor vehicle while:
>
> (a) Under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance . . .
>
> . . . .
>
> (2)(a) It is unlawful for any person to cause injury to another person by the operation of a vehicle while:
>
> 1. Under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance. . . .

¶ 40. In 1982 Wis. Stat. § 940.25(1)(a) (1981–82) read:

> Injury by intoxicated use of a vehicle. (1) Any person who does either of the following under par. (a) or (b) is guilty of a Class E felony:
>
> (a) Causes great bodily harm to another human being by the operation of a vehicle while under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance.

20

¶ 41. In 1982 Wis. Stat. § 939.22(42) (1981–82) defined the term "under the influence of an intoxicant" in the Criminal Code as follows:

> Words and phrases defined. In chs. 939 to 948, the following words and phrases have the designated meanings unless the context of a specific section manifestly requires a different construction:
>
> . . . .
>
> (42) "Under the influence of an intoxicant" means that the actor's ability to operate a vehicle or handle a firearm is materially impaired because of his consumption of an alcohol beverage or controlled substance under ch. 161.

¶ 42. In 1982 there was no statutory language in the Motor Vehicle Code defining "under the influence." By contrast, there was a statutory definition for that phrase in the Criminal Code. *See* Wis. Stat. § 939.22(42)(1981–82). Thus, there was good reason for this court to seek a uniform interpretation of the words "under the influence" in the two codes, and that meant embracing the term "materially impaired" from the definition in Wis. Stat. § 939.22(42)(1981–82).

¶ 43. The court understood, however, that the definition of "under the influence of an intoxicant" in Wis. Stat. § 939.22(42) (1981–82) had been part of the Wisconsin Criminal Code since the 1955 session of the legislature. Ch. 696, Laws of 1955. In the 1955–56 Wisconsin Statutes, § 939.22(42) read: " 'Under the influence of an intoxicant' means that the actor's ability to operate a vehicle or handle a firearm is *materially impaired* because of his consumption of an alcoholic beverage, a narcotic drug or other intoxicating substance." Wis. Stat. § 939.22(42) (1955–56) (emphasis

added). Thus, Wis. Stat. § 346.63(1)(a) and Wis. Stat. § 939.22(42) had coexisted in the statutes for three decades. Moreover, the definition of "under the influence" in § 939.22(42) was "based upon the [definition] traditionally used by the courts in this state. See, for example, *Devine v. Bischel,* 215 Wis. 331, 335 (1934); *Steinkrause v. Eckstein,* 170 Wis. 487, 491 (1920)." 5 Wisconsin Legislative Council, *Judiciary Committee Report on the Criminal Code,* at 17 (1953).

¶ 44. This is why the *Waalen* court confidently endorsed the circuit court's jury instruction, as well as the instruction in *Hernandez. See Waalen,* 130 Wis. 2d at 26, 28. The court saw no incompatibility or inconsistency between the term "under the influence" in Wis. Stat. § 346.63(1)(a)(1981–82) and the phrase "materially impaired because of his consumption of an alcohol beverage" in Wis. Stat. § 939.22(42)(1981–82). However, the court was forced to repudiate the notion that "material impairment" meant "substantial impairment," as suggested by the Criminal Jury Instructions Committee, *Waalen,* 130 Wis. 2d at 27, because that notion appeared to undermine the purpose of the statute by raising the proof requirement for "under the influence" and because the language had no basis in statutory text or legislative history.

¶ 45. The *Waalen* court made the point that the Motor Vehicle Code did not contain a definition of "under the influence" "at the time th[e] case was initially tried." *Id.* at 25. But the court recognized that the legislature had changed the statute to a "degree" in 1984 by 1983 Wis. Act 459, § 12. *See Waalen,* 130 Wis. 2d at 27–28. Section 12 amended Wis. Stat. § 346.63(1)(a) (1981–82), so that the statute read:

> Operating under influence of intoxicant or other drug. (1) No person may drive or operate a motor vehicle while:

22

(a) Under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance, *under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving;* . . .

Wis. Stat. § 346.63(1)(a)(1983–84) (emphasis added).

■■

¶ 46. The underscored language above is the language added by 1983 Wis. Act 459. This change did *not* modify or condition the existing language, that is, the language "under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance." Consequently, the *Waalen* court was mistaken in 1986 when it implied that the language "to a degree which renders him or her incapable of safely driving" modified *all* provisions in subsection (a) of Wis. Stat. § 346.63(1)(1983–84). This language applied only to "any other drug" or the combination of an intoxicant and "any other drug."

■■■■

¶ 47. The *Waalen* court was correct when it wrote: " 'material impairment' under sec. 939.22(42), Stats., *exists* when a person is incapable of driving safely, or is without proper control of all those faculties . . . necessary to avoid danger to others." *Waalen*, 130 Wis. 2d at 27 (emphasis added) (citation and internal quotation marks omitted). These phrases are used as examples. But the court was not correct if it implied that the phrase "incapable of safely driving" from Wis. Stat. § 346.63(1)(a) is part of the definition of "under the influence of an intoxicant" in Wis. Stat. § 939.22(42)(1983–84).

23

¶ 48. We acknowledge that 1995 Wis. Act 448 amended both Wis. Stat. § 346.63(1)(a) and Wis. Stat. § 939.22(42) in 1996, but, in our view, these amendments do not affect or alter this analysis.[12]

¶ 49. Building on these observations, we turn to the question whether the circuit court's response to the jury's request for clarification was error in light of *Waalen*.

¶ 50. The State asserts that "the *Waalen* language" did not ascribe a "peculiar" meaning to the term "materially impaired" in the context of criminal charges; thus the circuit court's response to the jury was acceptable and did not constitute error.

¶ 51. Hubbard counters, and the court of appeals held, that Judge Wolfgram's response to the jury's request for clarification should have provided "the *Waalen* language" (i.e., "incapable of safely driving") because the *Waalen* court's discussion of "material impairment" created a "peculiar meaning in the context of criminal charges." *Hubbard*, 306 Wis. 2d 356, ¶ 12. Hubbard argues that this language clarified the meaning of "materially impaired" and that the circuit court should have instructed the jury accordingly.

¶ 52. We disagree. The phrase "to a degree which renders him incapable of safely driving" does not affect the definition of "under the influence" in the Criminal

---

[12] 1995 Wis. Act 448 adopted the revised Uniform Controlled Substances Act and made other changes in the statutes relating to controlled substances. These changes included adding the phrase "controlled substance analog" to Wis. Stat. § 346.63 and Wis. Stat. § 939.22(42), as well as multiple other sections. 1995 Wis. Act 448, §§ 342, 445. These changes had no effect on the limited application of "incapable of safely driving."

Code. For the circuit court to have acceded to Hubbard's request for this "clarification" it would have rewritten the statute for Hubbard's benefit. He was not entitled to such largesse.

¶ 53. The *Waalen* court did not give "materially impaired" a "technical" or "peculiar" meaning unique to criminal law. Specifically, "the *Waalen* language" was not intended to define the statutory term "materially impaired." Instead, the *Waalen* court used the language to describe two circumstances in which material impairment "exists." *Waalen,* 130 Wis. 2d at 27. These were examples, not definitions. Therefore, the *Waalen* court was not defining "materially impaired" with "the *Waalen* language."

¶ 54. Other parts of the *Waalen* decision indicate acceptable means for a circuit court to instruct a jury regarding the definition of "under the influence." *See id.* at 26, 28. Hubbard has not argued that the specific jury instructions endorsed by the *Waalen* court should have been given by the circuit court. These instructions would not have benefited him because "the *Waalen* language" is not part of any of the specific jury instructions endorsed by the *Waalen* court. *Id.* at 22, 25–26 (reciting the circuit court's instruction in *Waalen* and the instruction given in *Hernandez*). Consequently, Hubbard's argument that "the *Waalen* language" defined "materially impaired" to give the term a "technical" or "peculiar" meaning in the context of criminal law is untenable.

¶ 55. Thus, when the jury asked Judge Wolfgram to define " 'materially' impaired," he was on solid footing in relying on Wis. Stat. § 990.01(1), which provides in pertinent part: "All words and phrases shall be construed according to common and approved usage"; and he did not erroneously exercise his discretion when he

directed the jury to "give all words not otherwise defined in the jury instructions their ordinary meaning." The court would not have been correct to give Hubbard's clarification request.[13]

¶ 56. We note that the circuit court was also correct on the facts. The jury's request for clarification focused on the word "materially," not on the term "materially impaired." The adverb "materially" is a word more likely to crop up in a lawyer's vocabulary than in common parlance, and the jury's probing question about the word was a very good one. The court's answer, to "give all *words* not otherwise defined in the jury instructions their ordinary meaning" was sound, responsive, and did not constitute an erroneous exercise of discretion. (Emphasis added.)

¶ 57. The circuit court had discretion to determine the necessity for, extent of, and form of reinstruction of the jury when responding to its request for clarification. *Hareng,* 90 Wis. 2d at 166 (citations omitted). Judge Wolfgram could have exercised his discretion by instructing the jury to re-read the jury instructions in their possession in light of the jury's request for a definition of "materially" impaired. "[A] court is not

---

[13] Hubbard's position regarding "the *Waalen* language" also runs contrary to common sense. Wisconsin Stat. § 939.22 acts like a dictionary for the Criminal Code. It is counterintuitive that a statutory definition in Wis. Stat. § 939.22(42), which is undeniably intended to create a unique and peculiar meaning for a term in the law, would have imbedded within it another "technical" or "peculiar" explanatory term requiring further definition. This interpretation would render statutory language virtually impenetrable, which belies the inherent premise of Wis. Stat. § 990.01(1) and the specific definitions found in Wis. Stat. § 939.22—clarity.

obligated to provide a jury with information solely because the jury believes it is important to its decision." *State v. Lombard,* 2004 WI App 52, ¶ 20, 271 Wis. 2d 529, 678 N.W.2d 338. However, once Judge Wolfgram correctly determined that "materially impaired" was not defined by "the *Waalen* language," he did not erroneously exercise his discretion by responding that the jury should give undefined words in the jury instructions their ordinary meaning. "If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist." *Fischer,* 168 Wis. 2d at 850 (citations omitted).

¶ 58. We hold that the court of appeals erred when it determined that this court's decision in *Waalen* gave the statutory term "materially impaired" a "peculiar meaning in the context of criminal charges," *Hubbard,* 306 Wis. 2d 356, ¶ 12, and that the jury should have been instructed accordingly. *Id.*, ¶ 17. Thus, the circuit court did not erroneously exercise its discretion when it responded to the jury's request for clarification by indicating that the jury should "give all words not otherwise defined in the jury instructions their ordinary meaning." This succinct answer may not always suffice, but it was correct on the facts presented.

## IV. CONCLUSION

¶ 59. We conclude that the circuit court's response to the jury's request for clarification was not error. The term "materially impaired" does not have a technical or peculiar meaning in the law beyond the time-tested explanations in standard jury instructions; therefore, the circuit court's response to the jury was not error, comported with Wis. Stat. § 990.01, and did not constitute an erroneous exercise of discretion. Accordingly, we reverse the court of appeals.

27

*By the Court.*—The decision of the court of appeals is reversed.

¶ 60. SHIRLEY S. ABRAHAMSON, C.J. *(concurring)*. In an effort to sustain the circuit court's erroneous instruction, the majority opinion adopts a self-contradictory and unworkable approach to Wis. Stat. § 940.25(1), which makes it a Class F felony to cause great bodily harm to another by operation of a vehicle while under the influence of an intoxicant.

¶ 61. **Here are the essential facts**: The State charged the defendant under Wis. Stat. § 940.25(1)(a), which provides that a person is guilty of a Class F felony if he or she "[c]auses great bodily harm to another human being by the operation of a vehicle while *under the influence of an intoxicant*" (emphasis added). The phrase "under the influence of an intoxicant" is defined in a separate statutory provision, Wis. Stat. § 939.22(42), which provides in relevant part that the term " '[u]nder the influence of an intoxicant' means that the actor's ability to operate a vehicle . . . is *materially impaired* because of his or her consumption of an alcohol beverage [or] a controlled substance . . . " (emphasis added). The present case focuses on the meaning of the words "materially impaired" in Wis. Stat. § 939.22(42).

¶ 62. The circuit court's initial instructions to the jury helped to clarify the meaning of "materially" for purposes of the statute. In its initial instructions, the circuit court stated in part that "[w]hat must be established is that the person has consumed a sufficient amount of Xanax or alprazolam to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle." The circuit court's instructions were largely based on

28

Wisconsin Criminal Jury Instruction No. 1262 (relating to Wis. Stat. § 940.25(1)(a)), which the circuit court merged with Wisconsin Criminal Jury Instruction No. 2664 (relating to Wis. Stat. § 346.63(1)(a), a Motor Vehicle Code provision).[1]

¶ 63. In the course of its deliberations, the jury posed the following question to the circuit court:

> Could the judge define "materially" impaired? Does this mean that he was impaired enough to have an effect on outcome? If not, what?

¶ 64. The jury's confusion is understandable. As the court of appeals stated, "[g]iven the attention the term 'materially impaired' has attracted from the courts, the legislature, and the jury instruction committee, it is no wonder that a jury would also wrestle with what it actually means."[2]

---

[1] *See* Wis JI—Criminal 1262 at 2 (stating that "[w]hat must be established is that the person has consumed a sufficient amount of alcohol to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle.").

Wis JI—Criminal 1262 is written to be applied in cases in which the intoxicant allegedly consumed by the defendant is alcohol. The circuit court's instructions substitute "Xanax or alprazolam" for "alcohol."

During oral argument, this court focused many of its questions on whether the circuit court's initial instructions to the jury were correct. The majority opinion does not address the court's and counsel's confusion about what instruction was most appropriate for the fact situation presented. The majority opinion's footnote, majority op., ¶ 24 n.7, does not reflect this court's difficulty in grappling with this issue.

[2] *State v. Hubbard,* 2007 WI App 240, ¶ 12, 306 Wis. 2d 356, 742 N.W.2d 893.

¶ 65. The circuit court responded to the jury's question by instructing the jury to give the statutory term "materially impaired" its ordinary meaning. The circuit court answered the jury's question as follows:

PLEASE GIVE ALL WORDS NOT OTHERWISE DEFINED IN THE JURY INSTRUCTIONS THEIR ORDINARY MEANING.

¶ 66. **Here is the problem**: Although the circuit court's reply to the jury may seem reasonable enough at first glance, it conflicts with this court's longstanding, precedential interpretation of the word "materially" in Wis. Stat. § 939.22(42).

¶ 67. The ordinary meaning of "materially" is **"substantially."**[3]

¶ 68. However, in *State v. Waalen,* 130 Wis. 2d 18, 386 N.W. 2d 47 (1986), this court expressly held that for purposes of Wis. Stat. § 939.22(42), **"materially" cannot be given the meaning of "substantially."**[4] Because the ordinary meaning of "materially" is "substan-

___

[3] *See Webster's Third New Int'l Dictionary* (1961) at 1392 (defining "material" as "being of real importance or great consequence: SUBSTANTIAL.") (capitalization in original); *American Heritage Dictionary of the English Language* (3d ed. 1992) at 1109 (defining "materially" to mean "[t]o a significant extent or degree; substantially.").

[4] *See State v. Waalen,* 130 Wis. 2d 18, 27, 386 N.W.2d 47 (1986) (rejecting the Criminal Jury Instructions Committee's conclusion that the meaning of "material" is equivalent to the meaning of "substantial" for purposes of Wis. Stat. § 939.22(42)).

The *Waalen* court construed the word "materially" in light of the statutory purpose instead of giving the word its ordinary meaning as the circuit court instructed the jury to do in the present case. The *Waalen* court stated that " '[m]aterial impair-

30

tially," and the *Waalen* decision held that "materially" cannot be given the meaning of "substantially" for purposes of Wis. Stat. § 939.22(42), the circuit court's reply to the jury question contradicted the *Waalen* court's interpretation of the statute.

¶ 69. Such is the dilemma that this court confronts in the instant case: Either the circuit court is correct that the statutory term "materially" should be given its ordinary meaning (*i.e.,* "substantially") or *Waalen* is correct that the statutory term "materially" cannot be given the meaning of "substantially." The circuit court and *Waalen* cannot both be right.

¶ 70. **Here is the majority opinion's answer to the problem:** The majority opinion adopts each of the two contradictory interpretations of the word "materially" in Wis. Stat. § 939.22(42). The majority opinion reaffirms the *Waalen* court's holding that the statutory term "materially" cannot mean "substantially."[5] The majority opinion then goes on to uphold the circuit court's instruction that the statutory term "materially" should be given its ordinary meaning as a synonym of "substantially."[6]

¶ 71. The majority opinion's mangled interpretation of Wis. Stat. § 939.22(42) is a disservice to Wisconsin's circuit courts, district attorneys, defense counsel, and the Wisconsin Jury Instruction Committee, all of whom rely upon this court for guidance on matters of statutory interpretation. Section 939.22(42)'s definition of "under the influence of an intoxicant" (which provides in part that a person is

---

ment' should not be given a definition that is inconsistent with the purpose of the statute . . . ." *Waalen,* 130 Wis. 2d at 27.

[5] *See* majority op., ¶¶ 35–36.

[6] Majority op., ¶¶ 55–56.

31

under the influence of an intoxicant when he or she is "materially" impaired) is incorporated into many statutes. See, for example, statutes that criminalize causing death by use of a vehicle or firearm while under the influence of an intoxicant,[7] sexually assaulting a victim who is under the influence of an intoxicant,[8] causing great bodily harm by operation of a vehicle while under the influence of an intoxicant,[9] and operating or going armed with a firearm while under the influence of an intoxicant.[10] This court has failed in its obligation to provide a clear and coherent sense of what the phrase "materially impaired" means.

¶ 72. **Here is my answer to the problem**: I would stick with *Waalen* and hold that the circuit court erroneously instructed the jury in response to its question. The circuit court could have answered the jury's question in a manner consistent with *Waalen*'s interpretation of Wis. Stat. § 939.22(42).

¶ 73. For example, the circuit court could have accepted the defendant's suggestion to draw language directly from the *Waalen* opinion, which states that a person is "materially" impaired for purposes of § 939.22(42) when he or she "is incapable of driving safely, or is without proper control of all those faculties necessary to avoid danger to others."[11] Or the circuit court could have repeated language from its own instructions, reiterating to the jury that "[w]hat must be established is that the person has consumed a sufficient

---

[7] Wis. Stat. § 940.09(1)(a), (c); (1g)(a), (c).

[8] Wis. Stat. § 940.225(2)(cm).

[9] Wis. Stat. § 940.25(1)(a), (c).

[10] Wis. Stat. § 941.20(1)(b).

[11] *Waalen*, 130 Wis. 2d at 27 (quotation marks, ellipsis, and citation omitted).

32

amount of Xanax or alprazolam to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle." Either approach, in my view, would have been sufficient.

¶ 74. I also conclude, however, that the circuit court's error was harmless error under the circumstances of the present case. The *Waalen* court made clear that the meaning of "materially" for purposes of Wis. Stat. § 939.22(42) is less demanding of the prosecution than the term "substantially" which constitutes the ordinary dictionary meaning of "materially."[12] As the State explains in its brief to this court, "[i]f the trial court's direction to the jury in this case to give the words 'materially impaired' their 'ordinary meaning' opened the door to the possibility that some jurors might impose a higher threshold [of guilt] . . . it was the state, not Hubbard, that was prejudiced by that possibility. Hubbard cannot complain about an instruction that . . . potentially made it harder for the state to convict him."[13]

¶ 75. For the reasons set forth, I concur in the court's mandate but write separately.

¶ 76. I am authorized to state that Justices ANN WALSH BRADLEY and LOUIS B. BUTLER, JR. join this opinion.

¶ 77. LOUIS B. BUTLER, JR., J. *(concurring)*. I join Chief Justice Abrahamson's concurrence. However, I

---

[12] *Id.* ("Requiring 'substantial impairment' of an individual's ability to operate a vehicle before that person could be found 'under the influence' would be inconsistent with the expressed legislative intent because it would not provide maximum safety for all users of state highways.").

[13] Reply Brief of Plaintiff-Respondent-Petitioner at 11.

am compelled to write separately to make it clear that the majority's opinion should not be construed as precedent for sanctioning the criminal prosecution of an individual who takes prescription medication—medicine that is designed to maintain his or her health and general welfare—at its prescribed dosage, only to then find him or herself arrested for driving under the influence.

¶ 78. The purpose of the Uniform Controlled Substances Act is to prevent abuse of drugs, not to create new criminal penalties for those who properly take prescription medicine as prescribed by their physicians in order to be more functional. *See* Wis. Stat. § 961.001:

> Declaration of intent. *The legislature finds that the abuse of controlled substances constitutes a serious problem for society.* As a partial solution, these laws regulating controlled substances have been enacted with penalties. The legislature, recognizing a need for differentiation among those who would violate these laws makes this declaration of legislative intent:

> (1g) Many of the controlled substances included in this chapter *have useful and legitimate medical* and scientific *purposes and are necessary to maintain the health and general welfare* of the people of this state.

(Emphasis added.) As this statutory language acknowledges, many of those drugs labeled as "controlled substances" are prescribed for the very purpose of helping individuals function better in society, and have beneficial medicinal purposes, making it safer, not more dangerous, both for those behind the wheel and those in their paths.

¶ 79. The case at hand involves prescription drug abuse involving a medication taken in excess of its prescribed dosage. The majority points out the dangers

resulting from an overdosage of the prescription drug Xanax, such as somnolence, confusion, impaired coordination, and diminished reflexes. Majority op., ¶ 6 n. 3. The majority also correctly observes that the defendant in this case took 13 Xanax pills before the automobile accident, which exceeded his prescribed dosage for the drug. *Id.*

¶ 80. This is not a case involving an individual taking a medication at its prescribed dosage.[1] It is critical to make this distinction clear, lest today's opinion be misread as sending a dangerous message to individuals taking prescription medications to disregard their doctor's orders and stop taking their prescribed medications if they want to retain their right to drive and thereby continue participating fully in society.

¶ 81. Prescription medications serve a critical role in the preservation of health and safety of individuals. This court has long recognized that "[i]t is not only desirable that the drugs be dispensed to the public by skillful and competent persons to avert peril from occasional mistakes, but it is far more desirable, nay, practically essential, that medicines be within prompt and easy reach by the public." *State v. Evans,* 130 Wis. 381, 388, 110 N.W. 241 (1907).

---

[1] I recognize that some prescriptions include warnings clearly specifying that a person taking the medication should not operate an automobile because of the effects the medication would have on the person. Failing to follow the prescription's instructions, in my view, would be improper and potentially subject a person to criminal prosecution.

Other prescriptions include warnings clearly indicating that before a person operates an automobile, the person should first determine what effects the medication might have. This opinion does not address such situations.

¶ 82. Our state already recognizes that "the effects of prescription medication can form the basis of an involuntary intoxication defense." *State v. Gardner,* 230 Wis. 2d 32, 40, 601 N.W.2d 670 (Ct. App. 1999); *see also* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 4.10(f), at 560 (1986). Under the Model Penal Code, intoxication that is not self-induced is an affirmative defense when it renders the actor incapable of appreciating the criminality of his or her conduct. *Gardner,* 230 Wis. 2d at 40; *see also Model Penal Code* § 2.08(4) (1962). An exclusion to the definition of "self-induced" intoxication exists when the actor knowingly introduces into his or her body substances pursuant to medical advice. *Gardner,* 230 Wis. 2d at 41; *see also Model Penal Code* § 2.08(5)(b); Phillip E. Hassman, *When Intoxication Deemed Involuntary so as to Constitute a Defense to Criminal Charge,* 73 A.L.R.3d 195 § 7 (1977). Thus, the "involuntary intoxication defense is available when the intoxication was due to prescription medication taken as directed." *Gardner,* 230 Wis. 2d at 35.

¶ 83. Moreover, the legislature has specifically adopted a valid prescription defense in OWI cases for detectable amounts of methamphetamine, gamma—hydroxybutyric acid, or delta—9—tetrahydrocannabinol in a defendant's blood. Wis. Stat. § 346.63(1)(d).[2] It is

---

[2] Wisconsin Stat. § 346.63 provides in relevant part:

(1) No person may drive or operate a motor vehicle while:

. . . .

(am) The person has a detectable amount of a restricted controlled substance in his or her blood.

. . . .

(d) In an action under par. (am) that is based on the defendant allegedly having a detectable amount of methamphetamine,

ludicrous to suggest that the legislature would provide a valid prescription defense for these otherwise illegal restricted controlled substances, while at the same time refusing to recognize a valid prescription defense for properly dispensed medicine taken at its proper dosage.

¶ 84. An improper reading of today's opinion would contravene the intent of the legislature in addressing "controlled substances" within the Wisconsin Statutes. The statutes addressed by the majority creating criminal penalties for the inappropriate use and abuse of controlled substances must be read in conjunction with the provisions of Wis. Stat. § 961.001 of the Uniform Controlled Substances Act quoted above, with our state's recognition of an involuntary intoxication defense, and with our state's recognition of an OWI prescription defense in cases involving a detectable amount of a restricted controlled substance in a defendant's blood.

¶ 85. The Uniform Controlled Substances Act reveals the legislature's intent to criminalize only that behavior linked to the abuse of controlled substances, and not to criminalize that behavior involving the proper use of prescription medicine. We must not lose sight of this essential distinction. If prescription medication is of the type that may assist a person in functioning more healthily, it is important to make sure that our evaluations of OWI cases do not impede the progress to be gained through the medication's use.

gamma-hydroxybutyric acid, or delta-9–tetrahydrocannabinol in his or her blood, the defendant has a defense if he or she proves by a preponderance of the evidence that at the time of the incident or occurrence he or she *had a valid prescription* for methamphetamine or one of its metabolic precursors, gamma-hydroxybutyric acid, or delta-9–tetrahydrocannabinol.

(Emphasis added).

Because it is clear that the legislature intended to penalize those who abuse drugs, while not extending criminal penalties to those who take at its proper dosage medicine that is properly prescribed under the direction of a doctor or pharmacist, that legislative purpose should not be undermined.

¶ 86. For the foregoing reasons, I respectfully concur.