DAVID T. PROSSER, J.
¶ 110. (dissenting). This case raises troubling issues about appellate review.
¶ 111. James E. Kochanski (Kochanski) sustained serious injuries when he tripped on a raised sidewalk and fell as he attempted to go inside a Speedway SuperAmerica gas station to pay his bill. The incident occurred at 12:54 p.m. on February 6, 2007. It had been snowing that morning, and snow had accumulated on the ground. According to Kochanski, the snow obscured his vision of the raised sidewalk in front of the door to the station, and he fell.
¶ 112. On August 5, 2009, Kochanski and his wife filed suit against Speedway SuperAmerica LLC (Speedway) in Milwaukee County Circuit Court. They claimed that Speedway had been negligent and had violated Wisconsin's safe-place statute, Wis. Stat. § 101.11.
¶ 113. Because this is Wisconsin, not Florida, individuals and merchants must deal with the frequency of snow-covered surfaces during winter months. Even in good weather, people can trip and fall. Bad weather, with its attendant ice and snow, increases this risk. However, the fact that a person falls on a merchant's property does not necessarily mean that the merchant can or should be held responsible for the person's injuries.
¶ 114. Whether a merchant is liable for a person's injuries on the merchant's property is dependent on the factual circumstances of each case, as those facts and circumstances are presented to the trier of fact at trial. *55 The plaintiff must satisfy his burden of proof, and the defendant is entitled to challenge the sufficiency of the plaintiffs evidence before being asked to present a defense. In this case, the defendant did not challenge the sufficiency of the evidence at the end of the plaintiffs case or ask the court later for a directed verdict.
¶ 115. When a case is permitted to go to a jury, the jury's verdict is entitled to substantial deference. When the circuit court approves a jury verdict, "this court will not overturn the jury's verdict unless 'there is such a complete failure of proof that the verdict must be based on speculation.'" Morden v. Cont'l AG, 2000 WI 51, ¶ 40, 235 Wis. 2d 325, 611 N.W.2d 659 (quoting Coryell v. Conn, 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979)). As we said in Ballard v. Lumbermens Mutual Casualty Co., 33 Wis. 2d 601, 605, 148 N.W.2d 65 (1967):
The review of this court:
[M]ust he based on the rule that when there is any credible evidence which under any reasonable view supports the jury finding, especially when the verdict has the approval of the trial court, it should not be disturbed. This is another way of saying the evidence must be viewed in the light most favorable to the verdict.
Id. (quoting Springen v. Ager Plumbing & Heating, Inc., 19 Wis. 2d 487, 489, 120 N.W.2d 692 (1963)).
¶ 116. Given this well established law, a party that fails to obtain the verdict it expected almost inevitably searches to find error in the trial. In this case, the error alleged is Judge Seifert's decision to give the absent witness instruction to the jury. Wis JI — Civil 410.
*56 ¶ 117. The law on review of jury instructions also is clear. This court will not reverse a circuit court's decision to give a jury instruction "absent an erroneous exercise of discretion." State v. Hubbard, 2008 WI 92, ¶ 28, 313 Wis. 2d 1, 752 N.W.2d 839 (citation omitted). Even if a circuit court does err in giving a jury instruction:
No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of... misdirection of the jury .. . unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.
Wis. Stat. § 805.18(2).
¶ 118. The majority here appears astonished that the circuit court gave the following absent witness instruction:
If a party fails to call a material witness within [its] control, or whom it would be more natural for that party to call than the opposing party, and the party fails to give a satisfactory explanation for not calling the witness, you may infer that the evidence which the witness would give would be unfavorable to the party who failed to call the witness.
Wis JI — Civil 410.
¶ 119. Kochanski requested the absent witness instruction. Speedway opposed it. Judge Seifert supported his ruling as follows:
Okay. Now I'll make my ruling:
Number one, all five were placed on the witness list by Speedway;
*57 Number [t]wo, it does not appear that any effort was made to subpoena any of those five;
Number three, as to Speedway's policy and practices, current employees are capable of giving that testimony and none of them have been subpoenaed, either.
And then [n]umber [flour, I think that the jury has a right to know what Speedway's policies are regarding salting; and, particularly the videotape, at least so far, has not shown whether or not the premises or the area were salted before the accident.
For all of those reasons, the Court has decided that Instruction 410 should be given.
¶ 120. The judge's reference to "all five" refers to the five persons that Speedway named in response to Kochanski's request in interrogatories to identify "each person you believe has knowledge of the facts and circumstances surrounding the accident." The five people Speedway submitted included the former store manager, two former customer service representatives, and two former food stewards. The names of these people appeared on Kochanski's witness list as adverse witnesses, but they also appeared on Speedway's witness list. Speedway later explained to the jury that the former store manager had "moved out of state" [Pennsylvania]. "We tried to contact him . . . but were unable to do so." Three other "former" employees were listed as having Milwaukee addresses; one former employee lived in Waukesha. Speedway did not explain why these "former" employees were not called, or why no current employee at the store was called, except to say that "Speedway is not going to be calling any witnesses from *58 the store. . . . We don't need any testimony from the manager in this case. It's all clear from the videotapes."
¶ 121. At trial, Speedway presented no live witnesses and no witnesses at all on the issue of liability. With respect to liability, Speedway relied on videotape from the store which was introduced by the plaintiff.
¶ 122. To overturn the jury's verdict on the basis of the absent witness instruction, the majority must determine, first, that giving the instruction constituted an erroneous exercise of discretion, and, second, that the "misdirection of the jury" affected the substantial rights of Speedway. This is where the troubling issues come in.
¶ 123. The majority finds that "there was no evidence in the record that the absent witnesses, former Speedway employees who had been on duty at the time of the accident, were material... or that it was more natural for Speedway, rather than Kochanski, to call them." Majority op., ¶ 2. The majority also concludes that "the instruction was prejudicial because without drawing a negative inference about Speedway's snow removal methods and processes from Speedway's decision not to call the former employees, the jury would not have found that Kochanski satisfied the notice element of his safe-place claim that was necessary to liability." Id.
¶ 124. A determination by the majority that "there was no evidence in the record that the absent witnesses . . . were material" is problematic. First, as stated in the majority opinion and quoted above in paragraph 123, the majority's determination refers only to five former employees, not to the former and current employees referred to by the circuit court. Second, the determination that "there was no evidence in the record" appears to be a finding of fact, directly at odds *59 with the determination of the circuit court.[1] Third, the jury instruction specifically refers to "a material witness," not every witness who might be called. It must be remembered that the defendant did not call any witnesses. Implicitly, then, the majority is determining that there were no material witnesses for Speedway to call — no former employees, no current employees, no corporate executives, nobody at all who could provide probative evidence on company policies on salting, snow removal, and safety or what happened the morning and noon hour of February 6, 2007 at the station. If Speedway had called even one witness, the propriety of the absent witness instruction would likely have been greatly diminished.
¶ 125. Speedway did not call anyone to explain company policy, if any, and how that policy was executed that morning. No one came to affirm that he or she had salted, swept, or shoveled the sidewalk sometime that morning before the incident.
¶ 126. This, of course, might not have been necessary if Speedway had produced videotape of some employee salting, sweeping, or shoveling the affected area before the incident, but it did not. The tape begins at 12:45 p.m. The incident occurred at 12:54 p.m., nine minutes later. The jury did not see any tape showing events before 12:45 p.m. Why? The tape could have shown employees salting, sweeping, or shoveling the raised sidewalk during the morning. Or not.
¶ 127. In addition, no employee came to boast that no one had ever tripped on that raised sidewalk before February 6, or after February 6. As a result, *60 there was no one there who might have had to acknowledge that several people had tripped at the same spot — if any had — making clear visibility of the step even more important.
¶ 128. This court does not know all the facts because the jury was not given all the facts.
¶ 129. The majority asserts that there was "no evidence in the record" that it was more natural for Speedway to call one of its former employees than Kochanski. This is unpersuasive. All the former employees had a past relationship with Speedway and an interest in vindicating their own conduct when the accident occurred. They had no relationship with Kochanski, who expected them to be adverse. These potential witnesses were not neutrals like the passenger on the bus in Thoreson v. Milwaukee & Suburban Transp. Corp., 56 Wis. 2d 231, 237-38, 201 N.W.2d 745 (1972). Speedway was in a better position to assess whether its former employees had relevant information than Kochanski was, in part because Speedway had all the videotape. Speedway had an even stronger relationship with its current employees and its executives and the ability to determine whether any one of them would be a valuable witness. But it decided to offer no witnesses.
¶ 130. Speedway could have given a persuasive argument why it called no witness at the trial. It satisfactorily explained the absence of the former manager, but it did not explain the absence of anyone else, except to say, "It's all clear from the videotapes."
¶ 131. It was not all clear from the videotapes because the videotapes were not complete. They didn't start until mere minutes before the incident. This is precisely the point that the circuit court made in its fourth justification for the instruction.
*61 ¶ 132. In short, the majority is second-guessing the circuit court's decision to give the absent witness instruction in several ways that are inappropriate.
¶ 133. Even if the absent witness instruction is deemed to be an erroneous exercise of discretion, there should be no reversal of the jury verdict unless there was prejudice affecting the substantial rights of the defendant. This presents another problem in the majority opinion.
¶ 134. If the majority had said, "the jury could not have found that Kochanski satisfied the notice element of his safe-place claim that was necessary to liability" without the absent witness instruction, it would have been concluding that the instruction permitted the jury to draw an inference from evidence that was insufficient to support the inference. Such a conclusion would probably have required the court to dismiss the case rather than send it back for a new trial.
¶ 135. The majority does something different. It concludes that "the jury would not have found that Kochanski satisfied the notice element of his safe-place claim that was necessary to liability" without the absent witness instruction. Majority op., ¶ 2 (emphasis added). This, however, is pure conjecture.
¶ 136. We task plaintiffs and defendants with putting forth their best evidence so that the party with the stronger case prevails. If a litigant's evidence is truly so scant that an alleged erroneous jury instruction is necessary to lend artificial credence to an insufficiently supported claim, we should not give that litigant another chance. Perhaps, confronted with the daunting standards of review, the majority feels that it is fairer to send the case back for trial to see if another jury will reach the same conclusion without the absent witness instruction. The new trial will be a touchstone for the *62 majority's determination that there is insufficient evidence to support the safe-place claim without the absent witness instruction. Of course, the new trial will be skewed because the defendant will have a second chance to put on formerly absent witnesses so that these defense witnesses will not be "absent" a second time.
¶ 137. For the foregoing reasons, I respectfully dissent.

 At the least, the determination fails to give proper deference to the circuit court because the circuit court must have determined that at least one person among Speedway's current and former employees was a material witness.