COURT OF APPEALS
DECISION
DATED AND FILED

December 15, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2019AP1042-CR**
**2019AP1043-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2015CF238
2015CF875

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

     PLAINTIFF-RESPONDENT,

  V.

WALTER LORENZO COLEMAN,

     DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County: FREDERICK C. ROSA, Judge. *Affirmed*.

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Walter Lorenzo Coleman appeals his judgments of conviction and the circuit court order denying his postconviction motions on ineffective assistance of counsel without an evidentiary hearing.  Coleman argues that he raised sufficient material facts entitling him to a *Machner*[1] hearing; specifically, that the motions made a sufficient showing that counsel was ineffective in failing to move to strike a biased juror and for not requesting two cautionary jury instructions related to accomplice testimony and other-acts evidence.  We conclude that Coleman's motions did not raise sufficient facts entitling him to a hearing and that the circuit court did not erroneously exercise its discretion in denying his motions without an evidentiary hearing.  Accordingly, we affirm.

## BACKGROUND

¶2     This matter arises out of trial counsel's performance at Coleman's consolidated jury trial for two cases:  the first for attempted first-degree homicide, armed robbery, and felon in possession of a firearm, each count as a repeater, and the second for felony intimidation of a victim as a party to a crime.[2]  Milwaukee police arrested Coleman based on a criminal complaint alleging that on December 18, 2014, Coleman arranged by text message to meet with E.B. to sell him cocaine.  E.B. walked away from the planned meeting because he grew uneasy after seeing Coleman.  Coleman demanded money from E.B., ran after him, and hit him on the head and face with a firearm.  Coleman then pulled on the backpack E.B. was wearing and again demanded money from E.B.  He fired a shot at E.B.'s feet.

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2] Coleman was first charged in Milwaukee County Circuit Court Case No. 2015CF238 in January 2015, and then charged a month later in Milwaukee County Circuit Court Case No. 2015CF875.

2

Coleman threatened to kill E.B., then shot him in the chest and stole his backpack as he fell.

¶3 When Milwaukee police took Coleman into custody in January 2015, he had four cell phones on his person, one of which matched the phone number from which E.B. received a text message arranging the drug deal on the night of the shooting. Shortly after his arrest, Coleman was charged with felony intimidation of E.B. as a party to a crime, because the State alleged that Coleman conspired with two other men, Montrell Hilson and Michael Carthran, to pay E.B. not to testify against Coleman and to threaten E.B. if he did not cooperate with their efforts.

¶4 Coleman was tried in June 2016. After the jury panel was sworn in at *voir dire*, the jurors each introduced themselves. Juror No. 23 disclosed that in 2006 she was the victim of an armed robbery, in which the suspect used a pistol, while she was working a night shift at a convenience store. Her current occupation was an assistant manager at the same convenience store location where she had been robbed in 2006. Juror No. 23 picked the robbery suspect out of three lineups and served as a witness at trial. She believed that the suspect was convicted. She remembered testifying at the Milwaukee County Courthouse, but she did not remember which assistant district attorney (ADA) prosecuted the case because it happened ten years ago. The following exchange took place:

> The Court: The allegation in this case is an armed robbery, also. Anything about your experience that you think would affect your ability to sit on a case involving the similar charge?
>
> Juror No. 23: I don't think so.
>
> The Court: If you were seated on this jury and something about the facts in this case brought back a memory about your experience, do you think you could let us know?
>
> Juror No. 23: Sure.

3

The Court: The very same district attorney's office is prosecuting this case that likely prosecuted your case. Do you recognize this particular prosecutor?

Juror No. 23: Honestly, no.

The Court: No.

Juror No. 23: Sorry.

The Court: I'm just checking. Anything about your experience with the [district attorney] that you think would affect how you listen to this district attorneys' presentation of evidence?

Juror No. 23: Probably not.

The Court: Okay. Fair enough.

¶5      The ADA asked Juror No. 23 if she would give the State the exact same starting point as she would give defense counsel. Juror No. 23 agreed that she would not give the State an easier or harder time because of her prior interaction with the office during the prosecution of the armed robbery. Defense counsel only questioned Juror No. 23 about her experience ten years ago picking out the armed robbery suspect from a photo lineup as well as identifying him in court at trial.

¶6      The circuit court questioned the potential jurors about impartiality and the presumption of Coleman's innocence. The circuit court asked the jurors:

> Does anybody here on the jury panel feel for some reason that was not yet mentioned by the [c]ourt whatever the reason that you could not be a fair and impartial juror if you are selected for this jury panel? Does anybody feel that way—something the [c]ourt hasn't brought up yet?

None of the jurors brought any issues to the court's attention. The circuit court asked the prospective jurors if, upon reflection, there were any answers they "would like to give to a question previously asked?" Juror No. 23 did not raise any concerns. Juror No. 23 was ultimately chosen to serve on the jury.

4

¶7    After the jury was selected and excused, the circuit court reviewed the jury instructions with counsel. Counsel found the instructions acceptable and did not have any corrections or additions.

¶8    At trial, Coleman's defense was that he did not commit the shooting. During E.B.'s testimony, he identified Coleman, who was present in the courtroom, as the man who shot him during an aborted drug deal. He testified that he had met Coleman three days before the shooting after he responded to a text from a number he did not recognize.[3] E.B. believed that the text message was an offer to sell him cocaine. Although E.B. was a long-time heroin addict, he attempted to buy cocaine from the unknown number and he reached out to Hilson, his current heroin dealer, to arrange to buy heroin. E.B. set a similar location and time for his planned purchases of heroin from Hilson and cocaine from the unknown number; however, he was surprised when Hilson and Coleman arrived in the same vehicle. E.B. got into the backseat of the vehicle, purchased heroin from Hilson and cocaine from Coleman, and then left the vehicle.

¶9    E.B. testified that three days later, he contacted a phone number he had for Coleman to arrange to buy twenty dollars worth of cocaine because his regular dealer, Hilson, was not willing to meet. While walking to the meeting location, E.B. got a call from a number he associated with Coleman, and he could

---

[3] The circuit court renewed its ruling to admit other-acts evidence that had been admitted in an earlier attempt to try Coleman; the previous trial ended in a mistrial on grounds unrelated to this appeal. In the previous trial, the State moved to admit evidence of a drug deal between Coleman and E.B. that occurred several days prior to the shooting, at which Hilson was present, and which occurred at the same location as the shooting. The State argued that this other-acts evidence would support the identification of Coleman and corroborate the information provided by E.B. Over defense counsel's objection that introducing testimony about a previous drug deal would confuse the jury and cast Coleman's character in a bad light, the circuit court concluded that the evidence was offered for the acceptable purpose of identification, that it was relevant, and that any potential prejudice to Coleman did not outweigh its probative value. *See* ***State v. Sullivan***, 216 Wis. 2d 768, 783, 785-90, 576 N.W.2d 30 (1998).

5

see Coleman talking on the phone while waiting inside a car with three other people at the meeting location. E.B. testified that he was nervous when he approached the car because he could see that Coleman had a pistol near his waistband and that the bag of alleged drugs was not packaged for a quick sale. E.B. told Coleman he changed his mind about the sale and began to walk away. He then testified that Coleman followed him and pointed the pistol at his face while threatening to kill him if he did not give Coleman all of his money. Coleman pistol whipped E.B. and ultimately shot E.B. in the chest. As E.B. passed out, he felt his backpack being removed from his body.

¶10    The State called Hilson, who testified that he had pleaded guilty to the charge of intimidation of a witness, as a party to a crime, the same charge for which Coleman was currently on trial. Hilson testified that he understood that the State sought his cooperation as a witness in this trial, but it made no promises or guarantees that there would be any changes to the charges or the sentencing recommendation by the State.

¶11    Hilson testified that he regularly sold heroin to E.B. for about a year prior to the shooting. He corroborated E.B.'s testimony that three days before the shooting, Hilson and Coleman, whom he identified in court, were in Coleman's car, when both he and Coleman arranged by phone to sell drugs. Both men turned out to be selling drugs at the same meeting place and to the same person, E.B. Hilson also testified about the events that led to the intimidation charge and to the terms of his plea agreement for that charge.

¶12    The State called Detective Thomas Carr, who testified about Coleman's telephone records. Carr testified about recorded phone calls between E.B. and Carthran regarding the offer of payment to E.B. if he did not testify against

6

Coleman. A law enforcement analyst testified about the cell phone location data that traced the similar location of E.B.'s phone and Coleman's phone on the night of the shooting.

¶13 At the close of evidence, the circuit court instructed the jury on the rules of law that governed deliberations. The jury instruction for the testimony of a witness granted concessions, specifically with regards to Hilson, was given.[4] The jury returned guilty verdicts on all four counts against Coleman.

¶14 By new counsel, Coleman moved the circuit court for postconviction relief alleging that his trial counsel was prejudicially ineffective and he requested a *Machner* hearing. The circuit court denied the motion without an evidentiary hearing. Coleman appeals. Additional facts will be set forth in the analysis.

## STANDARD OF REVIEW

¶15 "Whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant" to an evidentiary hearing is a mixed question of fact and law. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. If the motion alleges facts that would entitle the defendant to relief, "the circuit court has no discretion and must hold an evidentiary hearing." *State v. Bentley*, 201 Wis. 2d

---

[4] The record reflects that the following jury instruction was given regarding the testimony of a witness granted concessions:

> You have heard testimony from Montrel Hilson who has received concessions. At the time of the guilty plea, the State of Wisconsin recommended that Hilson receive three years of initial confinement followed by three years of extended supervision as a ceiling. This witness, like any other witness, may be prosecuted for testifying falsely. You should consider whether receiving concessions affected the testimony and give the testimony the weight you believe it is entitled to receive.

WIS JI—CRIMINAL 246.

7

303, 310, 548 N.W.2d 50 (1996). "Whether a motion alleges facts which, if true, would entitle a defendant to relief is a question of law that we review de novo." *Id.*

¶16 If the defendant's motion alleging ineffective assistance of counsel "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," then the circuit court has discretion to grant or deny a *Machner* hearing. *State v. Sholar*, 2018 WI 53, ¶50, 381 Wis. 2d 560, 912 N.W.2d 89 (citations omitted). We review the circuit court's discretionary decision to deny an evidentiary hearing under the erroneous exercise of discretion standard of review. *See Allen*, 274 Wis. 2d 568, ¶9. "A circuit court properly exercises its discretion when it has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." *Bentley*, 201 Wis. 2d at 318.

## ANALYSIS

¶17 Coleman argues that he was improperly denied an evidentiary hearing on his claims of ineffectiveness of counsel. First, he asserts that trial counsel was prejudicially deficient for failing to move to strike Juror No. 23 for subjective and objective bias. Second, he argues that trial counsel prejudiced his defense for failing to request jury instructions on accomplice's testimony and other-acts evidence.

¶18 To prove ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the defendant was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our first question is whether the defendant has shown that that counsel's performance was deficient. *Id.* "Counsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. Our second inquiry is whether the

8

defendant was prejudiced by counsel's performance. *Strickland*, 466 U.S. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In our analysis, we "may reverse the order of the two tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice" from counsel's performance. *See State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

### I. Coleman fails to show trial counsel's performance was deficient in proving juror bias.

¶19 Coleman argues that the circuit court erred in denying an evidentiary hearing on his claims that his trial counsel's performance was ineffective when she did not move to strike Juror No. 23 for cause. A defendant has a constitutional right to an unbiased jury. *See State v. Brunette*, 220 Wis. 2d 431, 439, 583 N.W.2d 174 (Ct. App. 1998); *see also* WIS. STAT. § 805.08 (2017-18).[5] Wisconsin recognizes three types of juror bias: statutory, subjective, and objective. *State v. Faucher*, 227 Wis. 2d 700, 716, 596 N.W.2d 770 (1999).[6] The circuit court denied Coleman's postconviction claims that Juror No. 23 was biased either subjectively or objectively. We address each claim separately.

---

[5] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[6] By statute, a juror is considered biased when "the juror is related by blood, marriage or adoption to any party or to any attorney appearing in the case, or has any financial interest in the case." WIS. STAT. § 805.08(1). A statutorily biased juror "may not serve on a jury regardless of his or her ability to be impartial." *State v. Faucher*, 227 Wis. 2d 700, 717, 596 N.W.2d 770 (1999). Statutory bias is not alleged or at issue in this matter.

## A. Subjective bias

¶20    Subjective bias "describe[s] bias that is revealed through the words and the demeanor of the prospective juror." *Id.* at 717.  This type of bias is "revealed by the prospective juror on *voir dire*:  it refers to the prospective juror's state of mind." *Id.*  The circuit court observes subjective bias in a prospective juror's words or demeanor. *Id.* at 718.  In considering demeanor, "the circuit court's assessment will often rest on its analysis of the juror's honesty and credibility." *State v. Funk*, 2011 WI 62, ¶37, 335 Wis. 2d 369, 799 N.W.2d 421.  "On review, we will uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous." *Faucher*, 227 Wis. 2d at 718.

¶21    Here, Coleman argues that Juror No. 23 showed subjective bias in response to two questions in *voir dire*.  First, Coleman asserts that Juror No. 23 gave an equivocal answer when the circuit court asked if she thought there was anything in her experience that would affect her ability to sit on this case involving a similar charge, and she answered, "I don't think so."  Neither the circuit court nor trial counsel followed up with more questions.  Second, Coleman points out that Juror No. 23 said she would "probably not" let anything about the district attorney's role in the prosecution of the previous armed robbery case affect how she listened to the presentation of the evidence in this case.

¶22    Coleman argues that Juror No. 23's *voir dire* responses are similar to a prospective juror who was determined to be subjectively biased in *State v. Ferron*, 219 Wis. 2d 481, 219, 579 N.W.2d 654 (1998), *abrogated on other grounds by State v. Lindell*, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223.  In *Ferron*, the prospective juror was considered subjectively biased because he stated he would have a hard time believing the defendant was innocent if he did not testify in his

10

own defense at trial but stated that he would "certainly try" and could "probably" set his opinion aside. *Id.*, 219 Wis. 2d at 489. The juror maintained his skepticism despite multiple explanations from the circuit court about a defendant's constitutional rights to not testify and the State's burden to prove the case. *Id.* at 488-89. Although superficially similar in the phrasing of the prospective jurors' short answers, we readily distinguish the cases. Juror No. 23 did not state that she would have an issue being impartial or that she was concerned about following the law as instructed by the court. Whereas in *Ferron*, our supreme court inferred that the juror's "probably" response epitomized his reluctance and did not overcome his previous biased responses, here, Juror No. 23's responses do not demonstrate that she was trying to overcome bias.

¶23 We are not persuaded that the two instances Coleman points out constitute subjective bias that either the circuit court or trial counsel should have considered a basis to strike this juror for cause. A "prospective juror need not respond to *voir dire* questions with unequivocal declarations of impartiality." *State v. Erickson*, 227 Wis. 2d 758, 776, 596 N.W.2d 749 (1999) (citations omitted). All of the prospective jurors, including Juror No. 23, were asked in multiple ways during *voir dire* if they would have any issues being fair and impartial or putting aside any feelings to follow the law as instructed by the court. The circuit court found that Juror No. 23's stated unequivocally "that she would give the State and the defense 'the same starting point' and that she couldn't think of anything in her past that would affect her ability to be on the panel." We conclude that the circuit court's finding that Juror No. 23 was not subjectively biased was not clearly erroneous.

¶24 Coleman's comparison of superficial language similarity between *Ferron* and Juror No. 23 does not show that Juror No. 23 exhibited subjective bias.

11

Because we conclude that the circuit court findings were not clearly erroneous, trial counsel's performance would not be deficient for failing to move to strike Juror No. 23 for cause based on subjective bias. Accordingly, the circuit court acted within its discretion when it denied a *Machner* hearing because the record conclusively demonstrates that Coleman was not eligible for relief. *See Bentley*, 201 Wis. 2d at 318.

### B. Objective bias

¶25 An objective bias analysis is an inquiry "not upon the individual prospective juror's state of mind, but rather upon whether the reasonable person in the individual prospective juror's position could be impartial." *Faucher*, 227 Wis. 2d at 718. The circuit court focuses an assessment of objective bias "on the reasonable person in light of [the] facts and circumstances" of the case. *Id.* at 719. "Whether a juror is objectively biased is a mixed question of fact and law." *Id.* at 720. We will uphold a circuit court's factual findings surrounding *voir dire* unless they are clearly erroneous. *Id.* Although we do not defer to a circuit court's legal conclusions, we give them weight when considering objective bias because the facts and law are closely intertwined. *Id.* Coleman asks us to conclude that Juror No. 23 must have been objectively biased because of her traumatic experience being robbed at gun point. We cannot agree with his assessment.

¶26 Coleman argues that no reasonable person who had been the victim of an armed robbery would have been able to impartially weigh evidence of the crimes alleged because of lingering trauma from the experience. He asserts that Juror No. 23 and E.B. had essentially identical experiences as victims of armed robbery with materially similar facts. As the State points out, the crimes were not materially similar merely because both robberies involved firearms. There is a significant

12

difference in that E.B. knew his assailant and had a relationship with him through drug dealing. In contrast, Juror No. 23 was robbed by a stranger with whom she had no prior relationship. As the circuit court's decision noted, "[t]he facts of the armed robbery in this case are intrinsically tied to the shooting and are not 'essentially identical' to the juror's experience."

¶27     In *Faucher*, our supreme court held that an objectively biased juror was seated on a jury because he had a strongly held belief in the credibility of a trial witness, his neighbor of four years. *Id.* at 707-08. The *Faucher* court's conclusion that a reasonable person in the juror's position could not set aside his opinion was based on the juror's strongly held beliefs about his neighbor, not the mere fact that they had a prior relationship. *Id.* at 735. Similarly, we examine whether Coleman alleged sufficient facts to show that Juror No. 23 demonstrated a strongly held belief, including an expression of lingering trauma, about armed robbery that a reasonable person would have a hard time putting aside.

¶28     We are reluctant to categorically exclude individuals from serving as juror as a matter of law. *See Erickson*, 227 Wis. 2d at 777. Even if Juror No. 23 had been the victim of an identical crime, it is not objective bias *per se* when a juror has been the victim of the same crime for which the defendant is on trial. *See Funk*, 335 Wis. 2d 369, ¶40. Our review of the record does not support Coleman's assertion that sitting on the jury of an armed robbery case would be extremely traumatic for Juror No. 23 because she was suffering from lingering trauma from the robbery ten years prior. As the State points out, Juror No. 23 still works at the same store and nothing in her *voir dire* answers suggested that she was suffering from trauma. The circuit court's conclusion that Juror No. 23 did not exhibit objective bias was not erroneous. *See id.*, ¶63. Coleman offers only conclusory

13

statements on Juror No. 23's objective bias; he does not provide sufficient material facts showing how or why Juror No. 23 was objectively biased.

¶29    Overall, Coleman has not alleged sufficient facts to show that he was entitled to an evidentiary hearing on his claim that trial counsel was prejudicially deficient by allowing a biased juror to be seated on the panel. Coleman "must include facts that allow the reviewing court to meaningfully assess [his] claim." *See Allen*, 274 Wis. 2d 568, ¶21 (citation omitted). When we review Coleman's claims on their face, Juror No. 23's answers in *voir dire* were not equivocal. Coleman's argument that Juror No. 23 must have lingering trauma from the armed robbery is merely a conclusory statement. He raises no material fact that showed Juror No. 23 was subjectively or objectively biased. In denying the postconviction motion, the circuit court ruled that Juror No. 23's responses, "particularly when viewed in the context of her entire *voir dire*, demonstrate[d] [neither] subjective [n]or objective bias." Therefore, we conclude that the circuit court did not erroneously exercise its discretion to deny a *Machner* hearing on claims of ineffective assistance of counsel on allegations of seating a biased juror.

**II.    Coleman fails to show that trial counsel prejudiced the defense by not requesting additional jury instructions.**

¶30    Coleman argues that the circuit court erred in denying an evidentiary hearing on his claim that trial counsel prejudiced his defense by failing to request two jury instructions, both related to Hilson's testimony. Coleman argues that his defense was prejudiced because the jury did not receive the testimony by accomplices instruction, which would instruct it to consider Hilson's testimony with "caution and great care" *see* WIS JI—CRIMINAL 245, and the cautionary other-acts evidence instruction, which would instruct the jurors to consider the evidence of

14

Coleman's meeting and drug deal with E.B. three days before the shooting only for the purposes of identification, not as evidence of his character or propensity to be guilty of the charged crime, *see* Wis JI—Criminal 275.

¶31    "Whether trial counsel's failure to object to an error in the jury instructions constitutes ineffective assistance of counsel is a mixed question of law and fact." *State v. Langlois*, 2018 WI 73, ¶49, 382 Wis. 2d 414, 913 N.W.2d 812. A jury instruction is designed to "fully and fairly inform the jury" of the law specific to this case. *State v. Hubbard*, 2008 WI 92, ¶26, 313 Wis. 2d 1, 752 N.W.2d 839 (citations omitted).    We consider jury instructions in the context of the overall charge, not in "artificial isolation." *Id.*, ¶27 (citations omitted). "Erroneous jury instructions warrant reversal and a new trial only when the error is prejudicial." *Dakter v. Cavallino*, 2015 WI 67, ¶33, 363 Wis. 2d 738, 866 N.W.2d 656.

### A.  The jury instruction for testimony by accomplices

¶32    At trial, Coleman's counsel did not request the testimony by accomplices instruction, which Coleman contends means that the jury verdict is undermined because if that instruction had been given, the jury would have weighed Hilson's testimony differently.  The circuit court's decision to deny an evidentiary hearing on the accomplice's jury instruction was based on its finding that Coleman did not suffer prejudice from his counsel's failure to make this request.  It found that there was not a reasonable probability that the jury would have viewed Hilson's credibility any differently, particularly in light of the overwhelming evidence that supported the verdict.  First, we do not consider the jury instructions as given an erroneous statement of the law.  Second, we disagree that the failure to provide this instruction was prejudicial.

15

¶33    The approved jury instructions read by the circuit court included the credibility of witnesses instruction[7] as well as the concessions jury instruction regarding the concessions Hilson received for his testimony.  The circuit court informed the jury that at the time of Hilson's guilty plea, the State had recommended a sentence ceiling of three years of initial confinement and three years of extended supervision.  The court instructed the jurors that "[y]ou should consider whether receiving concessions affected the testimony and give the testimony the weight you believe it is entitled to receive."

¶34    Coleman argues that the jury should also have been instructed with the testimony of accomplice's instruction[8] because it would tell the jurors to consider Hilson's testimony with "caution and great care."  *See* WIS JI—CRIMINAL

---

[7] In the credibility of witnesses jury instruction, the jurors are instructed to determine the "credibility of each witness" and to determine the weight to give testimony based on the following factors:

> Whether the witness has an interest or lack of interest in the result of this trial; the witness' conduct, appearance, and demeanor on the witness stand; the clearness or lack of clearness of the witness' recollections; the opportunity the witness had for observing and for knowing the matters the witness testified about; the reasonableness of the witness' testimony; the apparent intelligence of the witness; bias or prejudice, if any has been shown; possible motives for falsifying testimony; and all other facts and circumstances during the trial which tend either to support or to discredit the testimony.

Wis JI—CRIMINAL 300.

[8] The testimony by accomplice's jury instruction:

> You have heard testimony from (name accomplice) who stated that he/she was involved in the crime charged against the defendant.  You should consider this testimony with caution and great care, giving it the weight you believe it is entitled to receive.  You should not base a verdict of guilty upon it alone, unless after consideration of all the evidence you are satisfied beyond a reasonable doubt that the defendant is guilty.

Wis JI—CRIMINAL 245.

16

245. As our supreme court instructs us, we review jury instructions as a whole, not in isolation. *See Hubbard*, 313 Wis. 2d 1, ¶27. The circuit court has broad discretion over the language in jury instructions. *State v. Trammell*, 2019 WI 59, ¶23, 387 Wis. 2d 156, 928 N.W.2d 564. We conclude that the circuit court did not err in its instructions to the jury to consider Hilson's testimony in light of the concession he was offered.

¶35    Accomplice testimony raises due process concerns when the accomplice receives concessions for testifying. A defendant's right to a fair trial is safeguarded by (1) a disclosure of the agreement between the State and the accomplice; (2) opportunity for cross-examination; and (3) "instructions cautioning the jury to carefully evaluate the weight and credibility of the testimony of such witnesses who have been induced by agreements with the [S]tate to testify against the defendant." *State v. Nerison*, 136 Wis. 2d 37, 46, 401 N.W.2d 1 (1987). Here, the record shows that Hilson disclosed the terms of his agreement with the State, Coleman had the opportunity to cross-examine Hilson, and the jury was instructed to evaluate the weight and credibility of Hilson's testimony in light of the concessions.

¶36    The State argues that the evidence against Coleman was sufficient to support the verdict and there was no reasonable possibility that the jury would have reached a different conclusion with those two instructions. "It is well settled in Wisconsin that the failure to give an accomplice instruction is not error where the testimony of the accomplice is sufficiently corroborated." *State v. Smith*, 170 Wis. 2d 701, 715, 490 N.W.2d 40 (Ct. App. 1992). The cautionary jury instruction on accomplice testimony is offered when the State's case "against the accused consists of nothing more than the accomplice's testimony," but the need for this instruction is obviated by even "minimal corroboration" of the accomplice's

testimony. *Id.* (citations omitted); *see also Abaly v. State*, 163 Wis. 609, 612, 158 N.W. 308 (1916) (holding that a circuit court prejudicially erred in not providing a cautionary instruction to the jury to use great caution when weighing the testimony of an uncorroborated, complaining witness).

¶37    The circuit court examined the evidence corroborating Hilson's testimony and the "compelling direct and circumstantial evidence of guilt that was presented." We recite the highlights of that evidence.

¶38    The State's chief witness was the victim of the shooting, E.B., who identified Coleman to the police prior to Coleman's arrest and testified against him at trial. E.B. identified Coleman as the person from whom he bought cocaine three days before the shooting. E.B. testified that Coleman was the person who shot him in the chest when they were face-to-face. E.B. testified that the person who shot him was the last person who called his phone before the shooting. Hilson's testimony added credence to E.B.'s testimony by showing that E.B. and Coleman had prior face-to-face contact.

¶39    E.B.'s testimony was further corroborated by police evidence that connected Coleman's phone to E.B. and the location of the shooting. The police were able to match the phone number of the last call received by E.B.'s phone with a phone number assigned to a phone in Coleman's possession at the time of his arrest. There were phone records that confirmed communication between E.B.'s phone and Coleman's phone, specifically on the night of the prior drug deal and on the night of the shooting. Cell phone location tracking information also confirmed that E.B.'s phone and Coleman's phone were in the same general area on the night of the shooting. In addition to the phone records, a law enforcement analyst testified that in monitoring Coleman's jail phone calls, Coleman referenced the phone

number used to contact E.B., and Coleman also communicated with Carthran about talking to E.B., which was evidence in support of the intimidation charge.

¶40    The circuit court found that "even if the testimony of accomplices instruction had been given, there was no reasonable probability that the jury would have viewed Hilson's credibility any differently or that its verdict would have been any different." Therefore, the circuit court ruled that Coleman was not prejudiced by trial counsel's failure to request the accomplice's jury instruction. Accordingly, we conclude that Coleman is not entitled to postconviction relief here for the same reasoning. *See Bentley*, 201 Wis. 2d at 318.

### B. Other-acts evidence jury instruction

¶41    Turning to Coleman's second argument on jury instructions, he asserts that trial counsel erred in denying him an evidentiary hearing because trial counsel's failure to request the other-acts cautionary instruction[9] was prejudicial. He argues that testimony about the drug deal three days prior to the shooting may

---

[9] The other-acts jury instruction states:

> Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial. Specifically, evidence has been presented that the defendant (describe conduct). If you find that this conduct did occur, you should consider it only on the issue of identity. You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case. The evidence was received on the issue of identity, that is, whether the prior conduct of the defendant is so similar to the offense charged that it tends to identify the defendant as the one who committed the offense charged. You may consider this evidence only for the purpose I have described, giving it the weight you determine it deserves. It is not to be used to conclude that the defendant is a bad person and for that reason is guilty of the offense charged.

Wis JI—CRIMINAL 275.

have led the jury to think badly about Coleman's character. Coleman argues that his counsel's failure to request this jury instruction constitutes reversible error, which equates to ineffective assistance of counsel. Coleman relies on *State v. Spraggin*, in which our supreme court reversed a conviction when the circuit court admitted other-acts evidence, there was no cautionary jury instruction, and our supreme court believed there was "a definite risk that the conviction might be based on that evidence." *Id.*, 77 Wis. 2d 89, 100-02, 252 N.W.2d 94 (1977). We disagree that *Spraggin* supports a reversal here. As the *Spraggin* court reminds us, "errors committed at trial should not serve to overturn a judgment unless it appears the result might probably have been more favorable to the party complaining had the error not occurred." *Id.* at 101 (citation omitted). In other words, if there was no prejudice to the defendant, it was not reversible error.

¶42 We are not persuaded that Coleman was prejudiced by the failure to request this cautionary instruction. The circuit court's decision stated that the other-acts evidence was admitted solely for the purpose of identification.[10] The circuit court considered that trial counsel "may have reasonably decided not to request this instruction so as not to focus the jury's attention on the defendant's prior bad conduct." However, the circuit court found that even assuming deficient performance for this lapse, there was so much direct and circumstantial evidence of the defendant's guilt that there is no reasonable probability that counsel's failure to request the instruction materially contributed to the guilty verdicts. Further, our review supports the circuit court's conclusion that the record conclusively showed

---

[10] On appeal, the State argues evidence of the prior drug deal was admissible without being admitted as other-acts evidence, under *State v. Dukes*, 2007 WI App 175, ¶28, 303 Wis. 2d 208, 736 N.W.2d 515 ("Evidence is not 'other acts' evidence if it is part of the panorama of evidence needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime.") Because the trial court admitted and analyzed the prior drug deal as other-acts evidence, we do not reach this theory to resolve the issues raised.

that Coleman was not entitled to relief on his postconviction motion. *See Allen*, 274 Wis. 2d 568, ¶12.

¶43     Coleman has not alleged material facts that show when (or how or why) the jurors used the other-acts information for an improper purpose. *See Bentley*, 201 Wis. 2d at 313-314. The case against Coleman was not predicated on bad character or drug dealing; instead, the jury heard from the victim of the armed robbery and shooting, who identified Coleman as the person who robbed him at gun point and shot him, nearly killing him. The State provided sufficient evidence of phone records that showed interactions between E.B. and Coleman that supported E.B.'s identification, as well as testimony from Hilson. Therefore, Coleman was not prejudiced by the purported error. *See Strickland*, 466 U.S. at 694.

## CONCLUSION

¶44     In reviewing Coleman's claims of ineffective assistance of counsel, the circuit court ruled that counsel's performance was not deficient because Juror No. 23's responses in the context of the entire *voir dire* did not demonstrate either subjective or objective bias. For the jury instructions, the circuit court ruled that direct and circumstantial evidence of the defendant's guilt was so compelling that there is no reasonable probability that counsel's failure to request either instruction materially contributed to the guilty verdicts. Because the record "conclusively demonstrates" that Coleman was not prejudiced by his counsel's performance he is not entitled to relief, the circuit court did not erroneously exercise its discretion in denying his postconviction motion without a *Machner* hearing. *See Bentley*, 201 Wis. 2d at 318. Accordingly, we affirm.

*By the Court.—Judgments and order affirmed.*

21

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.